UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENYA TAYLOR, ET AL.                                                                              PLAINTIFFS

V.                                                                    CIVIL ACTION NO. 3:14CV352 DPJ-FKB

CHRISTOPHER EPPS, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER
OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, ET AL.           DEFENDANTS

ORDER

This civil-rights action is before the Court on motion of Defendants for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs have responded in opposition. Having considered the parties' submissions, along with the pertinent authorities, the Court finds that Defendants' motion should be granted in part and denied in part, as set forth below.

I.       Factual and Procedural History

The eleven plaintiffs in this action are current or former correctional officers at the Central Mississippi Correctional Facility (CMCF) in Pearl, Mississippi, which falls under the Mississippi Department of Corrections (MDOC). On November 28, 2013, shortly after "muster," these female guards were separated from the male guards and subjected to individual strip searches in the bathroom. Am. Compl. [25] at 3. Plaintiffs "were required to disrobe down to their underwear, pull up their bras, rub themselves between their thighs, run their hands around their underwear, turn around and bend over." *Id.* at 3–4. They contend the searches were not conducted in accordance with MDOC's policies and violated their Fourth and Fourteenth Amendment rights to be free from unreasonable searches. Plaintiffs also assert state-law claims

of false imprisonment and negligent and intentional infliction of emotional distress. In their prayer for relief, they seek punitive damages, expenses, and attorneys' fees.

Plaintiffs named the following six individuals as defendants in their individual and official capacities: Christopher Epps, former Commissioner of MDOC; Johnnie Denmark, Superintendent of CMCF; and Andrease Buckner, Kimeiriakis Buck, Travis Crane, and Flora Bogan, all correctional officers with MDOC. Plaintiffs explain that Buckner, Buck, Crane, and Bogan were "involved in conducting the illegal strip searches" and Epps and Denmark are liable based on "their supervisory roles within MDOC and . . . in developing, implementing, and enforcing MDOC policies." Pls.' Resp. [31] at 1.

Defendants Epps, Denmark, Buckner, and Bogan answered Plaintiffs' Amended Complaint and moved for dismissal under Rules 12(b)(1) and 12(b)(6). Neither Buck nor Crane joined in the motion, and it appears that neither has filed an answer. The moving Defendants submit that the § 1983 official-capacity claims are barred by Eleventh Amendment sovereign immunity, the § 1983 individual-capacity claims are insufficiently pleaded and otherwise barred by qualified immunity, and the state-law claims are barred by the Mississippi Tort Claims Act (MTCA). The Court addresses each of these arguments below.

II.     Motion to Dismiss Standard

In their motion to dismiss, Defendants invoke both Rules 12(b)(1) and 12(b)(6). The Court presumes that Defendants seek dismissal under Rule 12(b)(1) for those claims barred by Eleventh Amendment sovereign immunity. *See Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims

barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."). All other claims will be evaluated under Rule 12(b)(6).

    A.    Rule 12(b)(1)

"A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (per curiam) (internal quotation marks omitted). In ruling on a Rule 12(b)(1) motion, "the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts." *Id.* at 649–50 (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). Finally, the party asserting subject-matter jurisdiction bears the burden of proof. *Id.* at 649.

    B.    Rule 12(b)(6)

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

III.    Analysis

    A.    Section 1983 Official-Capacity Claims

Defendants first assert that Plaintiffs' § 1983 official-capacity claims are barred by Eleventh Amendment sovereign immunity. The Eleventh Amendment "bars suits in federal court by citizens of a state against their own state or a state agency or department." *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 146 (5th Cir. 1991) (internal quotation marks omitted). An official-capacity suit for damages is essentially a suit against the state and is subject to sovereign immunity. *See Marquez v. Woody*, 440 F. App'x 318, 324 n.9 (5th Cir. 2011) (per curiam) (noting that claims against state officials in their official capacities for damages are entitled to Eleventh Amendment immunity because the state that employs the officers is the real party in interest).

In response, Plaintiffs argue that their Amended Complaint fixes the problem by asserting claims under the MTCA, which, according to them, "represents a waiver of sovereign immunity." Pls.' Resp. [31] at 5. Plaintiffs' point is not entirely clear.[1] If Plaintiffs intended to

---

[1] Some of the confusion comes from the various uses of the term "sovereign immunity." Mississippi courts use the term to reference the immunities from suit found in the MTCA. *See, e.g.*, *Brantley v. City of Horn Lake*, Miss., 152 So. 3d 1106, 1108 (Miss. 2014) (en banc).

suggest that the MTCA waives Eleventh Amendment sovereign immunity as to the § 1983 official-capacity claims, then the argument fails. The MTCA does offer limited waivers from the sovereign immunity codified in Mississippi Code Section 11-46-3, but it expressly preserves Mississippi's right to invoke Eleventh Amendment sovereign immunity. Miss. Code Ann. § 11-46-5(4); *see also Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12CV229TSL-MTP, 2013 WL 286365, at *3 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014) (same). It is more likely that Plaintiffs have simply waived the § 1983 official-capacity claims in light of the Eleventh Amendment and instead pursue MTCA official-capacity claims. The § 1983 official-capacity claims will therefore be dismissed without prejudice. *See Warnock*, 88 F.3d at 343 (noting that dismissal under the Eleventh Amendment must be without prejudice). The MTCA official-capacity claims are addressed below.

B.  Section 1983 Individual-Capacity Claims

Defendants next move for dismissal of Plaintiffs' § 1983 individual-capacity claims based on qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). To determine if an individual is entitled to qualified immunity, the Court applies a two-step analysis. The Court first asks "whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated

---

Likewise, "the terms 'state sovereign immunity' and 'Eleventh Amendment immunity' are often used interchangeably to mean the same thing" (*i.e.*, immunity from suit in federal court). *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 342 (5th Cir. 2011) (per curiam). And in this case, the parties at times fail to explain whether their references to "sovereign immunity" invoke the MTCA or the Eleventh Amendment.

the plaintiff's constitutional rights." *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 238 (5th Cir. 2008) (per curiam).  If the defendant's conduct did not violate the plaintiff's constitutional rights, the defendant is entitled to qualified immunity.  *Id.*

The second prong requires the court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted).

Even before *Iqbal* and *Twombly*, the Fifth Circuit observed that plaintiffs pleading individual-capacity claims may not plead conclusions.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *see also Cox v. Kaelin*, 577 F. App'x 306, 312–13 (5th Cir. 2014) (construing *Schultea* as requiring more than mere conclusions but rejecting "heightened" pleading standard in this context).  And when, as here,

> a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail.  By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.

*Id.*, 47 F.3d at 1433.

Under these standards, the Court considers whether (1) Plaintiffs adequately pleaded that Defendants Epps, Denmark, and Bogan violated a constitutional right or that any Plaintiff other than Taylor has a claim against Defendant Buckner; and (2) even assuming all Defendants violated a constitutional right, whether their actions were objectively reasonable.

1. Sufficiently Averred Constitutional Violations

a. Epps and Denmark

Defendants insist that the Amended Complaint fails to allege Epps or Denmark were personally involved in the strip searches. Plaintiffs appear to concede the point, agreeing that "there is no evidence that Epps or Denmark 'had any personal involvement in the strip search,'" but they argue that "there is still a plausible claim for relief against Epps and Denmark *under the MTCA* with respect to the development, implementation, and supervision of MDOC's strip search policy." Pls.' Resp. [31] at 6 (emphasis added). The Court could stop here and dismiss the federal claims against Defendants Epps and Denmark as abandoned.[2]

Even assuming Plaintiffs meant to press their federal claims against these Defendants in their roles as supervisory officials "for the implementation of policies of the Department of Corrections," Am. Compl. [25] at 2, they have not demonstrated liability. A supervisory official may be held liable only if "'he implements unconstitutional policies that causally result in the constitutional injury.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). Here, Plaintiffs do not allege that MDOC's policies regarding searches are unconstitutional. Quite the contrary, they claim that the subject searches were unconstitutional in part because they were conducted *in violation of* MDOC's policies. *See* Am. Compl. [25] at 4 ("Upon information and belief, the strip searches that Plaintiffs were subjected to were not authorized in writing, and were not

---

[2] Plaintiffs' state-law claims under the MTCA are addressed later in this Order, but it bears noting that Plaintiffs' Complaint only contains state-law claims of false imprisonment and negligent and intentional infliction of emotional distress. It is devoid of any state-law claims related to development or implementation of MDOC policies.

justified under MDOC's own policies."). Accordingly, the Court finds Plaintiffs' § 1983 individual-capacity claims against Epps and Denmark are dismissed as confessed, or alternatively, for failure to state a claim.

### b. Bogan and Buckner

According to Defendants, the Amended Complaint contains only one specific allegation: "[A]t least one of the Plaintiffs, Kenya Taylor, was pat searched by Defendant Buckner around her breast after disrobing." Am. Compl. [25] ¶ 11. Defendants therefore assert that only Taylor has stated a specific claim against Buckner and none of the Plaintiffs have sufficiently pleaded a claim against Bogan.

Plaintiffs insist in response that the Amended Complaint aptly describes the entire group of Plaintiffs being searched by all of the non-supervisory defendants—Buckner, Buck, Bogan, and Crane. But the question for the Court is whether Plaintiffs have pleaded their claims against the individual Defendants in more than conclusory terms. While Plaintiffs as a whole have alleged that Defendants—also as a whole—subjected them to strip searches that were not based on reasonable suspicion, they have not outlined the specific conduct of each Defendant with respect to each Plaintiff.

Of equal concern, Plaintiffs claim "Defendants had no reasonable suspicion that these individual plaintiffs were carrying contraband," Am. Compl. [25] ¶ 14, but they offer no facts to support this conclusory statement. The averment therefore fails to offer "sufficient enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

When "[f]aced with sparse details of claimed wrongdoing by officials, trial courts routinely require plaintiffs to file a reply under Federal Rule of Civil Procedure 7(a) to qualified

immunity defenses." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). Accordingly, the Court exercises its discretion to order a Rule 7 reply addressing the qualified-immunity defense. Defendants' motion to dismiss the § 1983 individual-capacity claims against Bogan and Buckner is denied without prejudice. Defendants may resubmit a motion to dismiss on the basis of qualified immunity, or a motion for summary judgment, after Plaintiffs have filed their Rule 7(a) reply.[3]

### 2. Objective Reasonableness

Defendants claim that even if the searches violated Plaintiffs' constitutional rights, the officers did not violate clearly established law. To determine whether a law is "clearly established," the Court "asks whether the law so clearly and unambiguously prohibited the conduct that every reasonable official would understand that what he is doing violates the law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). And "[a]nswering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* (internal quotation marks omitted).

Here, Plaintiffs contend that Defendants were required to find "individualized reasonable suspicion" before conducting a strip search. There is support for their position. *See McDonell v. Hunter*, 809 F.2d 1302 (8th Cir. 1987) ("In light of the legitimate governmental interest in

---

[3]Another option would be an order granting the motion to dismiss, but such dismissals are generally entered without prejudice to the plaintiffs' right to amend. *See Harvey v. City of Brandon, Miss.*, No. 3:14cv739–DPJ–FKB, 2015 WL 461811, at *3 (S.D. Miss. Feb. 4, 2015) (allowing motion to amend when facts were insufficiently pleaded). In this case, the Court concludes that a Rule 7 reply is the more appropriate remedy, largely for the reasons examined in *Schultea*.

maintaining security at correctional institutions, it is our view . . . that a reasonable suspicion standard should be adopted for strip searches of correction officers while working in correctional facilities."). Indeed the Fifth Circuit has noted, albeit in an unpublished opinion, that "[a]t least three circuits have held that reasonable suspicion is the appropriate standard for the partial strip search of prison staff." *Rouse v. Tex. Dep't of Criminal Justice Institutional Div.*, 479 F. App'x 612, 614 (5th Cir. 2012) (per curiam). Though the *Rouse* parties did not dispute the legal standard, the Fifth Circuit nevertheless noted, "[W]e agree with the district court that the prison officials were required to have reasonable suspicion that appellant was carrying contraband in order to justify the partial strip search of the plaintiff." *Id.* And the Court further noted that "[t]he standard requires 'individualized suspicion' specifically directed to the person who is targeted for the strip search." *Id.* The *Rouse* opinion was issued before the subject incident.[4]

Defendants never address the reasonable-suspicion standard or the cases Plaintiffs cite in support of it. Instead, they generally argue that

> [i]t would not be clear to a reasonable correctional officer or prison official that conducting a search of guards for illegal contraband, especially given the problems that prisons face with correctional officers smuggling in contraband, would be "unlawful" and a violation of federal law.

Defs.' Mem. [29] at 12; *see also* Reply [33] at 2. Defendants offer no specific legal authority for this position.

So, as the issues now stand, the parties take contrary positions on what the clearly established law required in 2013 when this incident occurred. Plaintiffs contend that the individualized-reasonable-suspicion standard was clearly established, whereas Defendants

---

[4]Plaintiffs also note that the MDOC's own internal policies track, verbatim, the individualized-reasonable-suspicion standards found in these cases.

contend that they acted with objective reasonableness when conducting strip searches based on systemic concerns.  The Court will not decide which party is correct until it hears more from both.  Defendants will need to provide legal argument as to why the individualized-reasonable-suspicion standard was not clearly established in 2013.  And Plaintiffs will need to offer more than conclusory factual averments that the Defendants lacked individualized reasonable suspicion (assuming that was the clearly established standard).  For these reasons, Defendants' motion is denied without prejudice to their right to reassert the matter after Plaintiffs' Rule 7 reply.

    C.    MTCA

The Mississippi Tort Claims Act provides the exclusive remedy against a governmental entity and its employees.  Essentially, the MTCA waives sovereign immunity for tort claims but sets out twenty-five specific exemptions.  Miss. Code Ann. § 11-46-9(1).  If any exemption applies, the entity is immune.

        1.    Individual-Capacity Claims

As a threshold matter, Defendants assert that any state-law claims against them in their individual capacities are due to be dismissed pursuant to section 11-46-7(2), which provides:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.  For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Defendants reason that because there is no allegation that they acted outside the course and scope of their duties with MDOC, the individual-capacity claims are barred.

Plaintiffs counter that the MTCA claims survive, but it is unclear whether they ever respond to this specific argument as to the individual-capacity claims. Indeed their only substantive argument focuses on section 11-46-9(1)(d) and does not mention Defendants' arguments based on section 11-46-7(2). *See* Pls.' Mem. [31] at 11. To the extent the individual-capacity state-law claims are not abandoned, they are dismissed with prejudice pursuant to section 11-46-7(2) for the reasons Defendants state.

### 2. Official-Capacity Claims

Defendants assert sovereign immunity as to the state-law official-capacity claims based on the MTCA and the Eleventh Amendment. Neither argument is ripe for consideration.

#### a. Eleventh Amendment Sovereign Immunity

Defendants contend that "Plaintiffs' official capacity claims against the Defendants, both federal *and state law*, should be dismissed on the basis of sovereign immunity." Defs.' Reply [33] at 2 (emphasis added). Defendants did not specify whether they raised this argument with respect to the MTCA or the Eleventh Amendment, but it appears in a paragraph addressing the Eleventh Amendment. Assuming Defendants invoked the Eleventh Amendment, they appear to be correct because the amendment bars official-capacity state-law claims brought in federal court. *See Fox v. Mississippi*, 551 F. App'x 772, 774–75 (5th Cir. 2014) (per curiam) (affirming dismissal of § 1983 and state-law claims brought against defendants in their official capacities)). *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 (1984) ("[A] suit against state officials for retroactive monetary relief, whether based on federal or state law, must be

brought in state court."). The problem is that Defendants first raised this argument in their Reply. Defs.' Reply [33] at 2. And "[i]t is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (per curiam). Accordingly, this argument is denied without prejudice. Plaintiffs should be given an opportunity to respond.

      b.  MTCA Sovereign Immunity

Alternatively, Defendants contend that these claims fall within the discretionary-function exemption provided for in section 11-46-9(1)(d):

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . . .

In 2014, the Mississippi Supreme Court "overhauled its analysis of discretionary function immunity." *Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1108 (Miss. 2015) (en banc) (citing *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014)); *see also Fountainbleu Mgmt. Servs., L.L.C. v. City of Tupelo*, No. 14-60664, 2015 WL 1570213, at *1 (5th Cir. Apr. 9, 2015) (vacating the entry of summary judgment and remanding case for reconsideration in light of *Brantley*). Now,

> [t]he Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.

*Brantley*, 152 So. 3d at 1114–15. In other words, "a plaintiff may defeat sovereign immunity, even when a government entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority." *Id.* at 1115.

Plaintiffs embrace *Brantley*, asserting that because strip searches of MDOC employees are specifically restricted by MDOC policies, the duties are ministerial, not discretionary. They argue that "[t]he mandatory directives of the policy . . . create ministerial duties that specifically restrict strip searches to certain specific times, locations, and circumstances." Pls.' Resp. [31] at 12; *see also* MDOC "Control of Contraband/Body Searches - Staff" Policy [31-1] at 4. Defendants, however, ignore *Brantley*, rely exclusively on cases decided prior to 2014, and dismiss without discussion the possibility that MDOC guidelines could "transform the duty of performing . . . searches from discretionary to ministerial." Defs.' Reply [33] at 3.[5]

In the end, the Court is unwilling to delve into this new approach to discretionary-function immunity without the benefit of complete briefing (especially when the Eleventh Amendment may otherwise bar the state-law claims in this Court). Accordingly, Defendants' motion to dismiss the state-law official-capacity claims under the discretionary-function

---

[5]The Court notes that in *Brantley*, the city was subject to rules and regulations promulgated by the State Board of Health. *Id.* at 1116. And in *Boroujerdi*, the city, after undertaking sewer maintenance (a discretionary function), was subject to the Federal Water Pollution Control Act and Mississippi Department of Environmental Quality regulations. 158 So. 3d at 1113–14 (reversing summary judgment and remanding to give the plaintiff an opportunity to point to a statute, regulation, or ordinance rendering the city's inaction ministerial). Here, Plaintiffs point to internal policies within the MDOC. Neither side addresses the effect of this distinction, if any, on the analysis.

14

exemption of the MTCA is denied without prejudice. Defendants, if they choose, may later move to dismiss or for summary judgment on these grounds, provided they address *Brantley* and *Boroujerdi*.

III.     Conclusion

For the reasons explained, the Court finds Defendants' motion should be granted in part and denied in part. Plaintiffs' § 1983 official-capacity claims against all moving defendants are dismissed without prejudice; Plaintiffs' § 1983 individual-capacity claims against Epps and Denmark are dismissed with prejudice; and Plaintiffs' individual-capacity state-law claims against all moving defendants are dismissed under the MTCA with prejudice. Defendants' motion is denied without prejudice as to Plaintiffs' official-capacity state-law claims and as to Plaintiffs' § 1983 individual-capacity claims against Bogan and Buckner.

Plaintiffs are directed to file a Rule 7 reply, as explained in this Order, addressing Defendants' qualified-immunity defense and alleging with specificity the conduct of each Defendant with respect to each Plaintiff, within fourteen (14) days of this Order. The Reply shall also provide a factual basis for a plausible claim that Defendants lacked individualized reasonable suspicion for the strip searches. After the Rule 7 reply, the parties are instructed to confer and discuss whether the stay of this case should remain in place pending another motion from Defendants. If Defendants anticipate another motion in light of the Rule 7 reply, then they must file it within 14 days of that reply. If not, the parties should notify the Magistrate Judge that the stay on discovery may be lifted.

Finally, Plaintiffs have served Defendants Buck and Crane, but neither has filed an answer, and Plaintiffs have not moved for default judgment. Plaintiffs are directed to move for

default judgment as to these Defendants, or announce that they have abandoned their claims against Buck and Crane, within fourteen (14) days of this Order.  If Plaintiffs choose to pursue their claims against Buck and Crane, their conduct should also be outlined in the Rule 7 reply.

**SO ORDERED AND ADJUDGED** this the 18th day of May, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE